# Perkiomen & Sumneytown Turnpike Road.

*Turnpike roads—Condemnation—Successive proceedings—Act of June 2, 1887, P. L. 306.*

Under the Act of June 2, 1887, P. L. 306, the court of quarter sessions has power to appoint a jury to view and condemn a turnpike road for public use, although one year before on the petition of other parties a jury had been appointed and its report against condemnation had been confirmed by the court.

Argued Dec. 10, 1903. Appeal, No. 219, Oct. T., 1903, by Montgomery County, from order of Q. S. Montgomery Co., appointing a jury of view in the matter of the condemnation of Perkiomen & Sumneytown Turnpike Road. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Petition for appointment of viewers to condemn a turnpike road.

The opinion of the Superior Court states the case.

*Error assigned* was order appointing jury of view.

*J. P. Hale Jenkins*, for appellant.

*Jere B. Larzelere, Jr.*, with him *Jacob B. Hillegass*, for appellee.

OPINION BY ORLADY, J., July 28, 1904:

This appeal challenges the right of the court of quarter sessions to appoint a jury, under the Act of June 2, 1887, P. L. 306, to view and condemn a turnpike road or highway for public use, after a former jury had been appointed and its report against such condemnation had been confirmed by the court.

The act provides that whenever twenty-five or more resident taxpayers shall petition the court . . . . that it is for the best interests of the people of the county for such turnpike road or highway to become a public road, free from tolls and tollgates, it shall be the duty of the court to appoint a jury to view and condemn such turnpike and assess the damages to which the owners may be entitled therefor.

It appears by the record that the court, on a proper petition, appointed a jury and master on September 2, 1901, who on December 14, 1901, reported adversely to the petition, which report was confirmed absolutely by the court February 3, 1902. And that on February 16, 1903, a new petition was presented, which was supported by over 150 additional petitioners, the affidavits alleging a change of sentiment of the taxpayers and giving new and subsequent considerations in support of the petition. A jury and master were appointed, and their report condemning the turnpike for public use and assessing the damages at $19,400, was approved by the court, from which order the turnpike company appealed.

The question adjudicated by the first jury was that under the facts existing at that time the turnpike should not be condemned, but it would be a strained interpretation of the act of 1887 to hold that such a report would be conclusive of the right of new parties, under changed conditions, to have the question passed upon by a jury. Statutes are so to be construed as may best effectuate the intention of the makers, and the trend of legislation has been to favor a public ownership and control over such roads and highways.

The petition was to be disposed of under the facts presented at the date of filing. The formal requirement of the statute had been fully complied with, and when the respondents by their exceptions raised the question of jurisdiction it was found that six times the number of resident taxpayers required by the statute, and who had not been parties to the former action, were before the court as petitioners. The superadded parties had a right to institute the proceeding although the turnpike company was the same. It would be unreasonable to hold that twenty-five taxpayers of Montgomery county could either in good faith or by connivance prevent the thousands of others from raising a question in which the whole public was concerned. The court rightly held that the word "whenever" in the statute referred to whatever time, or at what time soever the petition was presented. The court always has discretionary power to prevent vexatious or cumulative petitions from being considered, and the facts presented by this record amply justified the court in appointing the viewers. As stated by the court below: "The broad ground is taken that the report of one jury forever closes the matter in the absence of additional legislation. This contention ignores the fact that what might be inexpedient this year might by reason of changed conditions become expedient the next year, as is illustrated in this case, for, since the confirmation of the first report, Schwenksville, through which the turnpike runs, has been incorporated as a borough, and a trolley road is proposed on the line of the turnpike. Increase of travel caused by improvements, industrial or otherwise, might make the payment of tolls burdensome, besides various other reasons which could be assigned, and which did not exist when the first proceeding was instituted.

The order of the court is affirmed.